Good afternoon. My name is Nicholas Markey. I represent the Fishmers, Senator Donchev and Augustino Zicoba. Your Honor, this is a petition for review from a BIA decision in which the BIA affirmed the immigration judge's denial of my client's asylum application. Your Honor, it is our position that the BIA and the immigration judge failed to adequately review and incorrectly deny the application. Judge Goldberg Counsel? Augustino Zicoba Yes, Your Honor. Judge Goldberg I have a couple of problems with the case and I want you to get a chance to address them. Augustino Zicoba Very good, Your Honor. Judge Goldberg When I look at the country report, it sounds as though they are not persecuting the Roma at the moment. They're discriminating against the Roma in a number of respects, but it hasn't risen to that level. Donchev is not Roma. He grew up with Roma friends. He has a bunch of police arrests, but on his own evidence, there were various kinds of theft. And it sounds like the only violence was by some skinheads, but there was no evidence that they were working for the government or beyond the control of the government. I have trouble following the case because of those things. Augustino Zicoba Yes, Your Honor. Your Honor, it would be our position... I'll address those. It would be our position, Your Honor, that there is evidence of Mr. Donchev being assaulted by police officers. He testified on numerous instances when he was arrested. While the immigration judge found that his arrests were limited to his criminal activity, the immigration judge, Your Honor, I do not believe paid attention to the testimony of Mr. Donchev. Mr. Donchev said he was arrested and he was arrested with Roma friends or because of his Roma involvement. The government or the police used the ruse of arrest to persecute him based on his association with Roma. I do concede, Your Honor, that Mr. Donchev is not Roma. However, he actively participates in organizations that support the Roma. Were the arrests theft-related or not? No, Your Honor. He was arrested or he was detained for, if the Court is referring to the – there was testimony at the individual hearing in which Mr. Donchev testified that while he was working at Ginkgo Trading, he was approached and interrogated by the police officers regarding theft or stolen property which was alleged to have occurred at his place of employment. That's what I meant.  So there's a theft. They round up the usual suspects, and it looks like they include Donchev. Well, Your Honor, they include Donchev because of his association with the Roma. Their position was that they were aware that the Roma who in the petition or in the position of the government were committing crimes and things like that to establish their reason for stopping Roma, and that because of Mr. Donchev's relationship with the Roma and his Roma friends, he was therefore engaged in theft also. Regardless of their ethnicity, were his friends involved in or suspected of involvement in thefts? No, Your Honor. That, at the time of his arrest for what happened at the business, they said that they – his friends were allegedly suspected or tied somehow to possession of stolen property. I think the testimony at the hearing was something to the effect that he was arrested or detained, the officer said, well, we know you had to have something involved with this because your Roma friends are all receiving stolen property. So I think that is where the I.J. was incorrect in her assumption that all of Mr. Donchev's arrests were criminally related. I don't see why the police would have to lay off him. His sister, I guess he's got a sister involved in the illegal passport trade. They did a successful search. Thefts keep happening around where he is. Why do they have to lay off him? Well, Your Honor, the arrest for the false passport or false documentation came from a search of his sister's residence. Part of the reason Mr. Donchev was arrested was ICE agents had, in a routine search of a Federal Express package or courier package, had noticed that there were suspect documentations or documents in this pouch that was going to be Federally expressed to his sister's address. They contacted his sister's address here in Edmonds, Washington. She indicated that she was expecting it or her husband did. And when the officers arrived, they then conducted a search of the residence. The – while the government maintains that the passport issue was something tied, it was not, Your Honor. During the course of the individual hearing, the trial attorney for the government did bring up the fact of the arrest of his residence, but it was clear that the arrests at the residence in the United States for the false passports were not tied to Mr. Donchev. Mr. Donchev admitted that he used false documents to enter the United States, but as to the documents that were found at the residence, that was something separate. It looked to me as though every contact he had had, every incident he had had, starting from his time in the military through all his arrests to his skinheads mugging him, could all be reasonably explained either by legitimate police inquiries into theft or else appear to be independent of his friendship with the Roma, like Your Honor. Or else not having anything to do with the government. Absent Mr. Donchev's testimony, I would say, yes, you could argue that if we were looking at straight police reports from these officers saying we showed up at New Year's Eve on a disturbance call, loud party, I think that was one of the issues that he had in his testimony. He also said the cops arrived. They then began, they came on the complaint of, you know, a loud party, but it escalated in that he was persecuted because he knew the Romans. I think a similar analogy would be back to the Civil Rights Movement, Your Honor, where in the South, individuals who sat in the front of a bus were charged with sitting in front of a bus, and you could say, well, they violated the law, but it was racially motivated. The same would apply to Mr. Donchev. I don't see the analogy, actually. The law there, they have laws in a lot of southern municipalities that require the segregation. They used to segregate the trains going from New York to D.C. and Delaware, and it was pursuant to laws there. Well, I guess what I'm getting at is, Your Honor, you can use a factually neutral law and apply it in a racial or ethnic manner to persecute somebody. And that's what I'm saying has happened to Mr. Donchev, is that the law was not racially neutral laws. That was Jim Crow laws.  That's true. But still, it's our position that the police are using these laws to further their harassment and persecution of Mr. Donchev. They show up instead of saying, turn down your music, we're going to arrest you, but we arrest only the Roma and his friend, and they go away. Or, for example, Your Honor, where he came out of the church, and he was arrested again for coming out of the church, being with a Roma friend. One could argue that the reason that they were arrested, because his Roma friend may have disobeyed an officer, but it escalated into he was arrested with his Roma friend. And that's why we're saying, Your Honor, that the facts do support the fact that he is being persecuted. What does he have to fear if he goes back? Same thing, Your Honor. His fear is that, should he return because of his relationship with the Roma, that he will then be increased or be persecuted again. Is there, you mean arrested and let go? Arrested and let go, or it could escalate. Arrested, detained, and beaten. He did testify that he was beaten in custody at one point. And, Your Honor, at that, I will reserve my remaining minute. Thank you, counsel. Good afternoon. May it please the Court. My name is Andrew Bibiano, and I'm from the United States Attorney's Office in Spokane, Washington. The record in this case simply does not compel the I.J. to find that persecution existed here or there's a well-founded fear of further persecution. This Court has dealt with cases that are factually very similar, virtually identical to the facts of this case and made the same essential finding, that with the State Department report that states that conditions have improved in a country where there's essentially widespread economic deprivation and discrimination of minority groups, that does not amount in itself to persecution, that we have here a case of a young man who does not actually belong to a group, so his identity as a minority person is not evident unless he has – unless there's other evidence other than that. I would compare it to a – if we're using the South analogy, someone in the South during the Civil Rights Movement who's African-American was obviously of that group, and anything that happened to them, one could reasonably imply that's because of their skin color. You have someone who simply associates with people who other than the South. You think when Goodman – Goodman, Schwerner, and Cheney were murdered, Cheney was being persecuted, but not Goodman and Schwerner? Absolutely not, Your Honor. I think in that case, there was evidence to show that it was their association that led them to be persecuted. I'm saying in this case, there isn't. There aren't comments being made. There isn't the obvious animus based on the racial issues that are there or the ethnic issues. It's simply – there's no comments being made. If you use the example of the – of the stop on the road, Mr. Domshev testified that he thinks that was because there were aromas in the car with him. But without a police saying something to that effect, that's just his opinion. It could be because the police don't like kids his age. Maybe they think that there are a bunch of hooligans out there to cause trouble. Maybe the police are just looking for a quota to fill. There has to be something besides, I think that because I'm with these people that I'm being persecuted for that reason. The whole – the whole essential record goes to that same basic problem. Counsel, in the excerpts or in the administrative record, there's a whole section which is kind of, I guess, advice to the services to how it deals with these cases. And it says in here that there's episodic violence against the Romas. And they then say, please also take a look at the lengthy discussion of the situation of the gypsies in our country reports. And what's the long description about the gypsies in the country reports? You're asking me to recap the account of the gypsies in the reports? Yes. I recall reading the record, and there is many, many paragraphs of the history of the Roma people from, I believe, 800 or 900 A.D. and through the different parts of Eastern Europe and the things they have suffered as far as the fact that they're a diverse society and there's actually more subsets, I believe. But it states here that they encountered prejudice and discrimination and episodic violence and go to the country reports to get more, so. I was also disappointed to find there's no more in the record to support that, Your Honor. I looked for that reference as well. Now there's, and also there were several attachments there that seemed to show us, and what most of us know from our reading and our experience, that gypsies are not exactly a favored segment of the population in Bulgaria. We have a case which is Mihalev versus Shashcroft. You're familiar with that, Your Honor. Yes, I am, Your Honor. Absolutely. In that case, they essentially stated that when these Romas were arrested because of complaints about noise in their apartment, that this was based on the racial and other discrimination. And we have several episodes in our case which are similar to that. And the only difference is that this fellow is not himself a Roma, but he has his friends are Roma and he has associated himself with their cause. Now are you suggesting that that be a persecution on account of his views on politics and race? Your Honor, I'm not suggesting that it can't be, but I'm suggesting that it's not a compulsion, that it must be. Well, it's the only distinction is whether he himself is a Roma or not in this Mihalev case where the people were Romas. I would actually make some more distinctions besides the one that you've made, Your Honor. I believe that that's a very key distinction. But more than that, even in Mihalev, we see that there was the incidents are similar, but only one of them was found to be persecution. The other two were not. And the facts of this case are so to show that if you're using the Mihalev test, these don't rise to the level of persecution. The one arrest in Mihalev that was considered persecution was only found so because of the fact that while the police arrested the Petitioner in that case for the crime of instituting gypsy gatherings, which on its face lets you know that this is a racial based, race-based arrest, they were beating him while saying gypsies don't deserve to live and making no doubt in anyone's mind that this is a completely race-based incident. Well, in that case, they're saying gypsies shouldn't be in the church. They did say that. And that's the one incident in this record, I believe, that might have some connection. In that case, I would say, well, yes, the policemen did express some racist sentiment in that point, but there was no persecution there. But in each of these incidents, they do make some reference to, well, your friends are the Romas, and so we're going to beat you up on account of that. I don't believe so. I think that Mr. Donshev believes that they're thinking that, but they don't actually say that. The record doesn't show any times where it's ever as clear as in Mihalev in which the police say we're beating you because you're a gypsy or friends with gypsies. The record shows there's beatings. I will concede that I wish there was a world we're living in where this was not commonplace in which excessive force wasn't used regularly in other countries, but it is, unfortunately. And that alone is not persecution. But it seems to me you almost have to draw the inference that it's because he's associating with the Romas that they take out after him and beat him in these several incidents. I don't believe so. I think that if they were, and we're basing it only on his testimony, they would have said something to that effect. And in most of these cases, there's maybe one comment, if anything, which shows that they even acknowledge that he is or they are Romas. You know, I will point out in Mihalev, there's two instances where Mihalev, Mr. Mihalev was stopped in the street one time for not having papers. He was detained for two weeks with beatings daily, and that was not considered persecution by this Court, even though he was a Roma. The inference was not made that it must have been because of his race. And later, he didn't check in at the police station, and he was beaten sexually and sexually assaulted, had to escape from prison and escape the country, and this Court found that that didn't necessarily show that it was on account of race, and he was a Roma. In this case, with those severe situations not being considered on account of his race, it's hard to see how the IJ could have been compelled to find that same inference here where he's not a Roma, no comments were made, and the charges, if there were any charges, were not related to Gypsy gatherings. They were legitimate criminal offenses. When he was in the military, he was directed to harass the Gypsies, and he wouldn't do it. Correct. However, we don't know if that was because of his connection to the Romas. Maybe he thinks that they knew he was a friend with Roma, and he thinks that they did it because they knew that. Those are both just wild speculations he's making. And even That doesn't seem to me like such a wild speculation. It seems to me you have to draw the reasonable inference. Well, my problem with his testimony, Your Honor, is that he didn't say how they knew or why they knew it or that they did it because of that. He just thinks that was why. And second, Your Honor, I think we have to ask the question of, suppose he wasn't friends with the Roma. They could have still asked him to make those beatings, and he could still have chosen not to do so as a conscientious objector to senseless violence, and that would not be on account of race that they were punishing him. It would be on account of the fact that he ethically did not choose to follow their orders. It wasn't because of who he was or any race that he was beaten. It was because of the fact that he didn't share the racist views of his superior officer. And furthermore, even if that were considered an event, that's not something that he has a well-founded fear of future persecution because he's no longer in the military. Well, we're talking now about whether there's been past persecution. I'm arguing alternatively, Your Honor, that I don't think there was past persecution. And even if there was, that would be rebutted based on the current changes in the country and changes in his life. Well, tell me about the changes in the country. I'm not aware of them because these country reports are not in the record as far as I could find them. Right. I believe – I will refer the Court to Mikhail Evett as that case does have the record before, and it refers to the record in that decision as one of the major factors in the decision. And the report that was submitted in this case doesn't include the whole record, but it does refer to 1997 democratic reforms and the fact that it's no longer tolerated, it's not government-sponsored. Well, if you look at these statements in here, these people are having trouble getting into the European Union because they've got, quote, a lot of work yet to do in their relationship with the Gypsies. Correct, Your Honor, but I guess I would respond that they're doing the work, and they are changing. What evidence do you have that they've really progressed in the work? All I have before me is the State Department report that says, quote, there's no systematic or government-sponsored persecution of any ethnic group, Roma included. That's all I have, unless there are more questions from Your Honor. Where is that in the record? That is page 283, I believe. 283, 284 is a report from the Department of State. Say it again. 283 and 284 is a report from the State Department in Bulgaria describing the frivolous and dubious grounds on which Bulgarians have claimed asylum and the fact that, in their opinion, there is no longer any systematic or widespread government persecution of the Roma. Any further questions before the Court? This is the part in all capital letters? Yes. It seems like it's shouting. I don't know why, but it's all capital letters. Thank you, counsel. Thank you. Your Honor, I guess I should point out the submission made by the trial attorney back in 2003 that the government recites to page 283 actually starts at 282. This is an excerpt from a telegram from the U.S. Embassy. I'm sorry, I couldn't hear you. It's an excerpt from a telegram from the U.S. Embassy in Sofia to one of the sitting judges at the time. Judge Warren was not the judge in Mr. Donachev's case. I would submit to the Court that the government did not submit any State Department reports. Wait a minute, a telegram from the embassy. That's kind of significant. That's people that are actually there. Your Honor, this is a telegram from the embassy from the USCIS, or then I would submit from USCIS. While it is from them there, it is not the State Department report, which the government tries to rely on. But this says that the human rights climate has improved dramatically since the 1997 ascension of a democratic reform government. I don't see why that doesn't damage your case. It does, Your Honor, but the Court, one of the questions of the Court was do you have any State Department reports, and we don't have any. We, our position is the government did not, we established past persecution. The government did not rebut that by submitting any information about current country conditions. We did submit information about country conditions at AR 380 through 397. Thank you. Thank you, counsel.
judges: B. Fletcher, Kleinfeld, Gould